No. 04-304

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 352N

BENJAMIN F. LEWIS, CARL D. LEWIS,
CLINE L. WORLOW and SHEILA R. WORLOW,
FRED D. ROHDE, CLYDE G. BOULDIN and
THEDA BEA BOULDIN, RONALD DEAN CLAPPER,
TEODOCIA G. MEYER, ELMER J. MEYER, JOHN F.
DENDINGER and CAROL DENDINGER,

                Defendants and Appellants,

     v.

PONDEROSA PINES RANCH PROPERTY
OWNERS ASSOCIATION,

                Plaintiff, Respondent and Cross-Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and for the County of Gallatin, Cause No. DV 2000-131
                  The Honorable Mark L. Guenther, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Cindy Dimarco, Attorney at Law, Bozeman, Montana
                (Attorney for Fred D. Rohde)

        For Respondent:

                Mark A. Bryan, Attorney at Law, Bozeman, Montana

                     Submitted on Briefs:  June 29, 2005

                             Decided:  December 29, 2005

Filed:

               _____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Fred D. Rohde (Rohde), one of several original defendants, appeals from the Eighteenth Judicial District Court's decision following a four-day bench trial in which Plaintiff Ponderosa Pines Ranch Property Owners Association (the Association) sought to enforce various restrictive covenants (hereinafter, collectively, "the covenants"). The Association cross-appeals. We affirm.

## ISSUES

¶3    Rohde raises six issues on appeal. We rephrase them as follows:

¶4    1. Did the District Court err when it determined that laches did not bar the Association's claim?

¶5    2. Did the District Court err when it determined that the Association did not waive its right to enforce the covenants?

¶6    3. Did the District Court err when it determined that the Association did not abandon the covenants?

¶7    4. Did the District Court err when it determined that the covenants applicable to Lot 586 run with the land?

2

¶8    5. Did the District Court abuse its discretion when it admitted portions of testimony from the Association's former officer and director, Prescott Walker?

¶9    6. Did the District Court err when it refused to admit a transcript of an audio-recorded annual meeting held by the Association?

¶10    The Association presents two issues on cross-appeal. We rephrase them as follows:

¶11    7. Did the District Court err when it determined that the Association could not limit retroactively the number of mobile homes on Rohde's land?

¶12    8. Did the District Court err when it determined that res judicata barred a portion of the Association's claim?

¶13    Finally, both parties raise the following issue on appeal:

¶14    9. Did the District Court err when it did not award attorney's fees and costs to either party?

## FACTUAL AND PROCEDURAL BACKGROUND

¶15    Ponderosa Pines Ranch is comprised of 1027 multi-acre lots in Gallatin County, Montana. Approximately ten percent of those lots are developed. A Hawaii corporation--Ponderosa Pines Ranch, Incorporated (PPRI)--originally owned and developed the land in the late 1970's. PPRI created the Association in 1983, and granted it the authority to enforce the covenants.

¶16    Rohde owns a ten-acre lot in Ponderosa Pines Ranch (Lot 586). PPRI first sold Lot 586 to Stanley McBride (McBride) and Mark Bunch (Bunch) via a contract for deed on July 24, 1978. The contract for deed stated that McBride and Bunch agreed to purchase Lot 586

3

"subject to all terms, provisions, covenants, conditions, reservations, restrictions, and easements of record, and building and use restrictions, if any, general to the district." The contract also obligated McBride and Bunch to become members of a homeowner's association upon its formation and be bound by its by-laws, rules, and applicable building codes. Bunch subsequently conveyed his interest in Lot 586 to McBride via quitclaim deed.

¶17 McBride and Rohde became joint tenants of the property in January 1993 pursuant to a warranty deed. When McBride died in April 1996, Rohde became the sole owner of Lot 586. The District Court found that although Rohde did not have a possessory interest in Lot 586 until 1993, he was involved with the property's development from the time McBride purchased it.

¶18 PPRI recorded the first covenants applicable to Lot 586 in February 1979 (Building Standards). The Building Standards provided that PPRI could amend the Standards without owners' notice, and granted any future-formed homeowner's association enforcement authority. The Building Standards did not prohibit mobile homes on Lot 586. McBride moved six mobile homes onto the property from 1979 to 1991.

¶19 The Building Standards did require PPRI's approval in writing before the property owners started, constructed, installed or erected any addition, building or other structure. McBride constructed two small outbuildings on Lot 586 in 1981, without seeking PPRI's permission. In 1983, McBride replaced a chicken coop that existed when he first purchased the property with a new one.

¶20    PPRI filed two actions against McBride in 1981.  The first began as a forfeiture action.  The history of that action is set forth in *Ponderosa Pines Ranch, Inc. v. McBride* (1982), 197 Mont. 301, 302-03, 642 P.2d 1050, 1050-51.  On appeal, this Court reversed and remanded.  *Ponderosa Pines Ranch, Inc.* 197 Mont. at 306, 642 P.2d at 1052.   Following remand, PPRI filed a motion for leave to file a second amended complaint in October 1989 that included causes of action for covenant violations and nuisance.  The amended complaint also sought to add the Association as a plaintiff.  The District Court denied the motion following a hearing in November 1989, and dismissed the entire action without prejudice for failure to prosecute.

¶21    PPRI accepted the full amount due under the contract for deed for Lot 586 in November 1989.  PPRI prepared a warranty deed and submitted it to McBride for his signature.  McBride refused to sign the deed.  On October 26, 1992, PPRI executed and recorded a warranty deed that did not require McBride's signature.  The warranty deed conveying the property to McBride subjected Lot 586 to PPRI's Building Standards and the Association's by-laws.  McBride did not object when the Association filed the deed.

¶22    The second action PPRI filed in 1981 sought monetary damages for trespass and the cost of gravel McBride allegedly removed from PPRI's property without permission.  The complaint included a nuisance count that alleged that McBride allowed undesirable buildings, vehicles, and animals on his property, and permitted raw sewage to run openly on the land.  The Association sought an injunction to abate these nuisances.  McBride did not

5

appear at the bench trial. The District Court granted PPRI's motion for a $25.00 judgment and $38.00 in costs. McBride paid this amount in December 1982.

¶23 The Association filed amendments to the Building Standards in 1992 (1992 Amendments). The 1992 Amendments prohibited mobile homes on the Ponderosa Pines lots, but provided that any single mobile home already existing as of the 1992 Amendment's recording date could remain. McBride and Rohde moved a mobile home onto Lot 586 in 1995. Rohde moved an additional mobile home onto the property a year later. A total of eight mobile homes were on Lot 586 when the Association filed the instant action to enforce various restrictive covenants on March 28, 2000.

¶24 Following trial, the court entered judgment in favor of the Association on some counts, and in favor of Rohde on others. Among other things, the court directed Rohde to remove the two mobile homes placed on his lot after 1992. Rohde appeals and the Association cross-appeals.

## STANDARD OF REVIEW

¶25 We review a district court's findings of fact to determine whether they are clearly erroneous. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, ¶ 11, 36 P.3d 408, ¶ 11. We examine the district court's conclusions of law to determine whether they are correct. *Kauffman-Harmon*, ¶ 11.

¶26 This Court will not overturn a district court's evidentiary rulings absent an abuse of discretion. *State v. Cesnik*, 2005 MT 257, ¶ 12, 329 Mont. 63, ¶ 12, 122 P.3d 456, ¶ 12.

6

The district court has broad discretion to determine if evidence is admissible. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 43, 301 Mont. 240, ¶ 43, 8 P.3d 778, ¶ 43.

¶27 We also review a district court's decision whether to award attorney's fees for an abuse of discretion. *Braach v. Graybeal*, 1999 MT 234, ¶ 6, 296 Mont. 138, ¶ 6, 988 P.2d 761, ¶ 6. An abuse of discretion arises only if a district court acted arbitrarily without employment of conscientious judgement or exceeded the bounds of reason resulting in substantial injustice. *Kiely Construction, L.L.C. v. City of Red Lodge,* 2002 MT 241, ¶ 92, 312 Mont. 52, ¶ 92, 57 P.3d 836, ¶ 92.

## ISSUE ONE

¶28 ***Did the District Court err when it determined that laches did not bar the Association's claim?***

¶29 The doctrine of laches applies where there has been such delay as to render enforcement of the asserted right inequitable. *Marriage of Deist,* 2003 MT 263, ¶ 17, 317 Mont. 427, ¶ 17, 77 P.3d 525, ¶ 17. We have said that there is "no absolute rule as to what constitutes laches, and each case is determined according to its own particular circumstances." *Gue v. Olds* (1990), 245 Mont. 117, 120, 799 P.2d 543, 545. Although there is no absolute rule, we have asserted repeatedly that two requirements be met for laches to apply. The district court must find both a lack of diligence by the party against whom the defense is being asserted and prejudice to the party asserting the defense. *Gue,* 245 Mont. at 120, 799 P.2d at 545; *In the Matter of Johnson*, 2004 MT 6, ¶ 20, 319 Mont. 188, ¶ 20, 84 P.3d 637, ¶ 20.

¶30 Here, the Association was diligent in attempting to enforce the restrictive covenants. The 1992 Amendments for the first time prohibited mobile homes on Lot 586. Rohde's

possessory interest in the property began in January 1993, and he moved mobile homes on to the property in 1995 and 1996. The Association notified Rohde of his property's covenant violations in October 1999 by registered mail, but Rohde refused to sign for the letter. The letter was also sent by regular first class mail, and was not returned. The Association then commenced the present action on March 28, 2000. The Association's lack of success in enforcing the covenants does not signify a lack of diligence.

¶31 Rohde asserts also that the Association's failure to enforce the covenants prejudiced him because the land's original owner, McBride, died in April 1996, and McBride's death denied Rohde the ability to present facts known only to McBride. The District Court found, and Rohde testified, that although Rohde was not a grantee on the original contract from PPRI to McBride, he was involved with the development of Lot 586 from the date of purchase. Consequently, Rohde--by his own admission--shared McBride's knowledge regarding Lot 586. Ample evidence therefore existed to the effect that McBride's death did not prejudice Rohde.

¶32 Based upon the foregoing, we conclude that the District Court did not err in declining to apply the doctrine of laches to this matter.

## ISSUE TWO

¶33 *Did the District Court err when it determined that the Association did not waive its right to enforce the covenants?*

¶34 Waiver is the intentional relinquishment of a known right, claim, or privilege. *Collection Bureau Services, Inc. v. Morrow,* 2004 MT 84, ¶ 9, 320 Mont. 478, ¶ 9, 87 P.3d

1024, ¶ 9. A party can communicate waiver through express declarations or through a course of conduct which manifests the intention to forego the benefit. *Collection Bureau Services, Inc.*, ¶ 11.

¶35 Here, the Association did not expressly communicate or engage in a course of conduct that manifested an intention to forego its right to enforce the covenants. Although the covenants did not expressly prohibit mobile homes on Lot 586 until 1992, the Association attempted to disallow the mobile homes on Lot 586 as early as 1981, when it filed a nuisance complaint that stated "[d]efendant keeps on his property junk mobile homes." *See also* the discussion in ¶ 30. Under these facts, we cannot conclude that the District Court's conclusion of law that the Association "has been engaged in a consistent pattern of the enforcement of the covenants and has not engaged in a course of conduct which induce[s] the belief that it waived the protective covenants" was incorrect.

## ISSUE THREE

¶36 ***Did the District Court err when it determined that the Association did not abandon the covenants?***

¶37 Rohde asserts that the Association abandoned the covenant prohibiting mobile homes because the "overwhelming majority of structures" in Ponderosa Pines Ranch are mobile homes. However, the fact is that the majority of the mobile homes in the area are lawful under the 1992 Amendments that permit "a single mobile home existing on any tract, as of the date of recording of these Covenants [1992 Amendments]" to remain. Further, only ten percent of the lots are developed presently. Thus, even if numerous mobile homes stand in

9

Ponderosa Pines Ranch, it does not necessarily follow that the Association has abandoned the covenants. We will not disturb the District Court's conclusion that Rohde has failed to present any factual evidence or case authority in support of his contention that the Association has abandoned the restrictive covenants.

## ISSUE FOUR

¶38     ***Did the District Court err when it determined that the covenants applicable to Lot 586 run with the land?***

¶39     Rohde asserts that the District Court committed reversible error when it determined that the covenants apply to Lot 586 presently. Rohde argues that because the by-laws did not exist at the time McBride and Bunch purchased the land, the buyers could not have been aware of this aspect of their bargain, and, consequently, the provision is void for vagueness. Rohde fails to provide Montana law in support of this argument.

¶40     Montana courts construe restrictive covenants under the same rules as are applied to contracts. *Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶ 15, 326 Mont. 154, ¶ 15, 108 P.3d 481, ¶ 15. When the language of a contract is clear and unambiguous, the language controls and the duty of the court is simply to apply the language as written to the facts of the case and decide the case accordingly. *Hanson,* ¶ 15*; Carbon County v. Dain Bosworth, Inc.* (1994), 265 Mont. 75, 87, 874 P.2d 718, 726.

¶41     Here, the contract McBride and Bunch signed stated, "[t]he Buyer agrees that Buyer will become a member of the Owner's Association at such time as it is formed and be bound by its By-laws [sic] and rules, including any building code applicable to Buyer's property." We agree with the District Court that this statement is "clear and unambiguous." The contract clearly communicated the bargain to McBride and Bunch; it is not void for vagueness.

10

¶42   Rohde reasons also that the restrictive covenants do not apply presently because they were personal to McBride. Rohde fails to provide any Montana law to support his argument that the covenants are personal. Section 70-17-203(3), MCA, is directly applicable, however. The statute provides that a covenant not yet in existence that is contained in a grant of an estate "runs with the land so far as the assigns thus mentioned are concerned." Section 70-17-203(3), MCA.

¶43   Here, the original purchase contract specified that the burden be "binding upon . . . the Buyer and his or her heirs, executors, administrators and assigns." Under Montana statute, the future covenant that obligated McBride and Bunch to join a homeowner's association and be bound by its rules runs with land. *See* §§ 70-17-201, 70-17-203(3), MCA. Consequently, the court did not err in concluding that the covenants apply presently to Lot 586.

¶44   Rohde contends finally that the covenants do not apply because the District Court erroneously determined that the original purchase contract merged into the warranty deed. Montana's general rule is that "all provisions in a contract for sale of real property are merged into the deed." *Urquhart v. Teller*, 1998 MT 119, ¶ 28, 288 Mont. 497, ¶ 28, 958 P.2d 714, ¶ 28. Merger does not occur, however, when the parties intended that some term or agreement be collateral to the sale and not merge with the deed. *Tungsten Holdings, Inc. v. Olson*, 2002 MT 158, ¶ 17, 310 Mont. 374, ¶ 17, 50 P.3d 1086, ¶ 17.

¶45   Rohde argues that McBride intended that the provision of the purchase agreement that obligated him to become a member of the Association, and be bound by its rules, would not survive after the property was conveyed to him by deed. Rohde cites McBride's refusal to sign the first warranty deed that the Association prepared as evidence of this intent. The fact remains, however, that the Association filed a warranty deed on October 29, 1992, that did not require McBride's signature. The deed stated clearly that the landowner takes the

11

property subject to PPRI's building standards and the Association's by-laws. McBride did not challenge the deed.

¶46 Rohde cannot escape obligations agreed to under the purchase contract because McBride unilaterally declared, through his refusal to sign the deed, that he did not intend for the obligations to merge into the warranty deed. Consequently, the court did not err in concluding that the provisions of the purchase contract merged into the warranty deed and the covenants apply presently to Lot 586.

## ISSUE FIVE

¶47 *Did the District Court abuse its discretion when it admitted portions of testimony from the Association's former officer and director, Prescott Walker?*

¶48 Rohde asserts that the District Court erroneously permitted the Association's principal witness, Prescott Walker (Walker), to testify to matters outside his personal knowledge in violation of Rules 602 and 801(c), M.R.Evid. Rohde does not indicate specifically to which statements he now objects, but refers to a standing objection he preserved at trial to Walker's testimony.

¶49 The District Court selectively sustained some of Rohde's objections to Walker's testimony and overruled others. The District Court allowed Rohde's attorney to voir dire Walker twice and held a side bar conference to ensure that Walker's testimony complied with the Montana Rules of Evidence. Moreover, we cannot glean from Rohde's brief which of Walker's statements he contends are objectionable. Our review of the record demonstrates that the District Court did not act arbitrarily without conscientious judgment

12

or exceed the bounds of reason when it determined that Walker could testify to some matters to which Rohde objected.

## ISSUE SIX

¶50 *Did the District Court err when it refused to admit a transcript of an audio-recorded annual meeting held by the Association?*

¶51 Rohde claims that the District Court committed reversible error when it excluded Exhibit R-II--a written transcript of an audio-recorded annual meeting the Association's board held in 1996.

¶52 Rohde offered Exhibit R-II during the trial. The District Court reserved judgment on R-II's admissibility and ordered briefing. The Association and Rohde submitted two briefs each that thoroughly addressed R-II's admissibility in light of foundational and authentication requirements, hearsay issues, attorney-client and work product privilege doctrines, and the best evidence rule. The District Court agreed ultimately with the Association and declined to admit the transcript. The court's order reflects that the judge considered both arguments and used his discretion to reject the transcript for lack of authentication on the basis of Rules 901(a) and 902(8), M.R.Evid. The District Court did not act arbitrarily and without conscientious judgment when it refused to admit Exhibit R-II.

## CROSS-APPEAL

### ISSUE SEVEN

¶53 *Did the District Court err when it determined that the Association could not limit retroactively the number of mobile homes on Rohde's land?*

13

¶54 The Association cross-appeals the District Court's decision to allow all mobile homes placed upon Lot 586 prior to the adoption of the 1992 Amendments to remain. It asserts that Rohde should be required to remove all mobile homes but one because the "exception" to the mobile home prohibition ended with McBride's ownership.

¶55 Here, the covenants run with the land. *See* our discussion at ¶¶ 42-43 above. Until 1992, there was no prohibition in the Building Standards against the placement of mobile homes on Lot 586. Six of the mobile homes were placed on the property during a time when the 1979 Building Standards permitted them. These six mobile homes did not lose their "grandfathered" status upon the Association enacting the 1992 Amendments, upon McBride adding Rohde as a joint tenant, or upon Rohde becoming a sole owner. Thus, the District Court did not err in concluding that Rohde is not required to remove any mobile homes placed on the property prior to the 1992 Amendments.

## ISSUE EIGHT

¶56 ***Did the District Court err when it determined that res judicata barred a portion of the Association's claim?***

¶57 Res judicata bars subsequent litigation if: 1) the parties or their privies are the same; 2) the capacities of the persons are the same in reference to the subject matter and the issues; 3) the subject matter of the claim is the same; and 4) the issues are the same and relate to the same subject matter. *Glickman v. Whitefish Credit Union Association* (1998), 287 Mont. 161, ¶ 20, 951 P.2d 1388, ¶ 20. The Association concedes in its reply brief that McBride and Rohde were in privity for the purpose of res judicata. The privity between PPRI and the

14

Association was not addressed on appeal. Thus, we must determine whether the Association seeks to litigate the same subject matter and issues as were addressed in its 1981 actions.

¶58   One of the actions filed in 1981 included a nuisance count that addressed mobile homes on Lot 586 at the time of the suit. The present litigation addresses all eight mobile homes on Rohde's property, regardless of when they appeared. Thus, the subject matter and issues litigated now are in part the same, to the extent the present action seeks to include the mobile homes placed on the property prior to 1981. Consequently, the District Court did not err in concluding that res judicata bars the action insofar as it seeks to address mobile homes that existed on Lot 586 prior to 1981.

## ISSUE NINE

¶59   ***Did the District Court err when it did not award attorney's fees and costs to either party?***

¶60   Rohde and the Association each cite to a provision in the 1992 Amendments that entitles the prevailing party to collect attorney's fees, in support of their contention that the District Court committed reversible error when it ordered each party to pay its own fees and costs.

¶61   A contractual provision awarding attorney's fees to a prevailing party is not effective when each party prevails on different issues. *Winters v. Winters*, 2004 MT 82, ¶ 59, 320 Mont. 459, ¶ 59, 87 P.3d 1005, ¶ 59. Each party prevailed on different issues, and thus the provision in the 1992 Amendments is ineffective. The District Court acted within its discretion when it denied fees and costs to both parties. *Winters*, ¶ 59. We will not disturb its decision.

15

¶62 Affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS